THE LIMITED, INC., and Limited Distribution Services, Inc., Plaintiff,

v.

PDQ TRANSIT, INC., Defendant.

No. C2-00-282.

United States District Court, S.D. Ohio, Eastern Division.

March 30, 2001.

Juan Jose Gonzales Perez, Perez & Morris, Columbus, OH, for plaintiffs.

Alexander M. Andrews, Ulmer & Berne, Columbus, OH, Michael L. Foran, Robert Thomas Boylan, Clausen Miller PC, Chicago, IL, for defendant.

### *OPINION AND ORDER*

GEORGE C. SMITH, District Judge.

Plaintiffs are seeking compensatory and punitive damages for loss of merchandise in shipping. Defendant moves to dismiss plaintiffs' claim for material deviation (Count II), and to strike plaintiffs' claim for punitive damages. (Doc. 4). For the reasons that follow, the Court grants defendant's motion to dismiss and motion to

strike plaintiffs' claim for punitive damages.

## I. FACTS

For purposes of ruling on Defendant's motion to dismiss, the Court accepts as true the well-pleaded facts set forth in the complaint. The Limited and Limited Distribution Services (LDS) are Delaware corporations. PDQ Transt, Inc. (PDQ) is an Ohio corporation.

LDS arranges for the transportation of goods for corporations affiliated with The Limited. If any goods entrusted to LDS by the affiliated corporations are lost, damaged or stolen, LDS is required to reimburse the corporations for the goods at their retail value.

This action involves the non-delivery of certain cargo delivered by LDS to PDQ, in the care, custody and control of PDQ from November 12 to 14, 1999. PDQ entered into a "Contract Carriage Agreement" to transport goods from Columbus, OH to Orlando for LDS for consideration. November 12, 1999, PDQ's driver departed Reynoldsburg, Ohio with trailer number 4838 "Trailer", containing 1998 cartons of goods belonging to the affiliated corporations. The merchandise was valued at $541,960.

When the PDQ trailer arrived at Orlando, Florida at 10:30 P.M. on November 13, 1999. No one was present at the Limited's facility. PDQ's driver parked the Trailer, broke the seal on the Trailer, and opened the door. Ten minutes later, the driver unhooked the Trailer. PDQ's driver did not use a king pin lock to secure the Trailer and made no other efforts to secure it. The PDQ driver left the facility, and the merchandise was stolen. LDS followed its contract with the affiliated corporations and reimbursed the value of the merchandise.

## II. MOTION TO DISMISS

■ A motion to dismiss for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir.1978). Rule 12(b)(6) must be read in conjunction with Fed.R.Civ.P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, *Federal Practice and Procedure* § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

■ On the other hand, more than bare assertions of legal conclusions ARE required to satisfy the notice pleading standard. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal

theory." *Id.* (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

*Id.*

Fed.R.Civ.P. 12(f) requires: "upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## III. DISCUSSION

The Limited and LDS are seeking compensatory damages against PDQ on three counts. The first is for breach of contract, the second is for violating the "material deviation" doctrine, and the third is for violation of the Carmack Amendment. Plaintiffs are seeking compensatory damages for the lost or stolen merchandise, as well as recission of the contract for carriage, and punitive damages. Defendant has moved to dismiss Count II of plaintiffs' complaint and to strike plaintiffs' prayer for punitive damages.

The Carmack Amendment governs the liability of carriers of interstate cargo. It states:

> A carrier... shall issue a receipt or bill of lading for property it receives for transportation. That carrier and any other carrier that delivers that property and is providing transportation or service... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States.

49 U.S.C. 14706(a)1.

The Carmack Amendment has been interpreted to preempt all state law claims against a carrier for loss or damages to interstate shipments. *North American Van Lines v. Pinkerton Security Systems, Inc.*, 89 F.3d 452, 458 (7th Cir.1996); *W.D. Lawson & Company v. Penn Central Co.*, 456 F.2d 419, 421 (6th Cir.1972).

### A. Punitive Damages

■ Defendant first argues that Plaintiffs may not recover punitive damages under the Carmack Amendment. The Carmack Amendment, 49 U.S.C. § 14706, provides the guidelines for liability when property is delivered in violation of routing instructions. The carrier who delivers the property is liable to the person who is entitled to recover under the bill of lading 49 U.S.C. § 14706(a)(1). There is no provision for punitive damages.

The greater weight of recent authority supports the proposition that the Carmack Amendment precludes punitive damages. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377 (5th Cir.1998); *Gordon v. United Van Lines, Inc.* 130 F.3d 282, 285 (7th Cir.1997); *Cleveland v. Beltman North American Co. Inc.*, 30 F.3d 373 (2d Cir.1994); *Pro–Pack, Inc. v. Hub Group, Inc.* 1995 WL 505934 (N.D.Ill.1995). These decisions rest on the fact that punitive damages are inconsistent with the Carmack Amendment because their availability would create an uncertainty in lia-

bility that the Amendment was intended to eliminate.

Plaintiffs rely heavily on *Hubbard v. Allied Van Lines, Inc.*, 540 F.2d 1224 (4th Cir.1976) for the proposition that punitive damages are applicable here. In *Hubbard*, an owner of household furniture and other personal property, sued for punitive damages for mental distress inflicted as a result of lost property by a common carrier. The Fourth Circuit held that punitive damages are recoverable under statute.

*Hubbard* is distinguishable due to the personal nature of the property in that case, as opposed to the case at bar where the lost items are merely tangible manufactured goods. *Hubbard* also requires that in order to sustain a claim for punitive damages, mental distress must be alleged. Plaintiffs have not alleged mental distress. Indeed, the facts plaintiffs allege suggest nothing more than simple negligence, and would not support a claim for punitive damages under any theory.

Punitive damages are inconsistent with the Carmack Amendment and are immaterial for this case pursuant to Rule 12(f). Plaintiffs' claim for punitive damages will therefore be stricken.

### B. Material Breach

Plaintiffs allege that defendant "materially deviated" from their contract by deliberately abandoning the merchandise. Plaintiffs maintain that the doctrine invalidates PDQ's contractual limitation of liability. The "material deviation" doctrine is derived from admiralty law. *The Sarnia* 278 F. 459, 459 (2nd Cir.1921). The doctrine provides that a contractual limitation of liability will not restrict shipper's recovery if the carrier has breached a material provision. *Id.* It has been held to have no application in the context of regulated interstate commerce. *Rocky Ford Moving Vans, Inc. v. United States*, 501 F.2d 1369 (8th Cir.1974); *Rafaella Gallery*

*v. United Parcel Service*, 818 F.Supp. 53 (S.D.N.Y.1993).

The doctrine has been applied in limited circumstances, however, where the shipper has paid an additional charge to ensure specialized safety measures to reduce the risk of damage to its cargo and the carrier fails to perform those very measures which resulted in damage to the cargo. *Praxair v. Mayflower Transit Inc.*, 919 F.Supp. 650, 656 (S.D.N.Y.1996); *Nippon Fire & Marine Insurance v. Skyway Freight Systems*, 67 F.Supp.2d 293 (S.D.N.Y.1999). In *Praxair* the plaintiff had paid for a higher transportation rate for specialized care, specifically air-ride and blanket wrapping. *Id.* at 654. A higher fee for a specialized care is what distinguishes *Praxair* from *Rafaella, Rocky Ford,* and other federal cases that rejected the application of the doctrine. *Id.*

Plaintiffs in this case do not allege in their complaint that they paid a higher fee for a specialized service. The only specialized service that they requested is that the trailer should not be left unhooked and the PDQ drivers were instructed to at all times stay with the LDS' loaded trailers. There was no higher fee paid for this service so *Praxair* is not applicable here. The claim under the "material deviation" doctrine will be dismissed.

### IV. DISPOSITION

Based on the above, the Court **GRANTS** Defendant's motion to dismiss Count II of plaintiffs' complaint. (Doc. 1). The Court also **GRANTS** defendant's motion to strike plaintiffs' claim for punitive damages. (Doc. 4).

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Doc 4. From the Court's pending motions list.

**IT IS SO ORDERED.**